# Abdul Hassan Law Group, PLLC
## 215-28 Hillside Avenue
## Queens Village, New York, 11427

~~~~

**Abdul K. Hassan, Esq.**　　　　　　　　　　　　　　　　　　　　　　　　　　Tel: 718-740-1000
Email: abdul@abdulhassan.com　　　　　　　　　　　　　　　　　　　　　　　Fax: 718-740-2000
*Employment and Labor Lawyer*　　　　　　　　　　　　　　　　　　　Web: www.abdulhassan.com

November 22, 2017

Via ECF

Hon. Lois Bloom, USMJ
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

<u>Re: Matarr Ceesae v. TT's Car Wash Corp. et al.</u>
　　Case No. 17-cv-00291 (ARR)(LB)
　　Supplemental Motion for Settlement Approval

Dear Magistrate-Judge Bloom:

　　　　My firm represents plaintiff Matarr Ceesae ("Plaintiff" or "Ceesae"), in the above-referenced action, and I respectfully provide the Court with this supplemental submission as per its November 16, 2017 order. (ECF No. 20). The exhibits referenced herein are attached to the declaration of Plaintiff's Counsel Abdul K. Hassan, Esq. ("Hassan Decl.").

## TABLE OF CONTENTS

I.　　FEES FOR ATTORNEY HASSAN ................................................................................. 2

　　1.　　THE IMPACT OF CHEEKS ON FEE DECISIONS ........................................................ 5

　　　　(A)　　CHEEKS DID NOT CHANGE SETTLED FLSA-FEE JURISPRUDENCE ............. 5

　　　　(B)　　CHEEKS IS CONSISTENT WITH VENEGAS ........................................................ 5

　　　　(C)　　CHEEKS DID NOT PLACE A PERCENTAGE CAP ON FEES .............................. 6

　　　　(D)　　THE FLSA PLACES THE DUTY TO PAY WAGES ON THE EMPLOYER – NOT ON THE EMPLOYEE'S ATTORNEY .......................................................................... 7

1

2.  THE IMPACT OF WOLINSKY ........................................................................................ 8

II. PLAINTIFF'S SHARE OF THE SETTLEMENT IS REASONABLE ............................... 8

1.  THE COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION 10

2.  THE STAGE OF THE PROCEEDINGS AND THE AMOUNT OF DISCOVERY COMPLETED ........................................................................................................................ 10

3.  THE RISKS OF ESTABLISHING LIABILITY ............................................................... 11

4.  THE RISKS OF ESTABLISHING DAMAGES .............................................................. 11

5.  THE ABILITY OF DEFENDANTS TO WITHSTAND A LARGER JUDGMENT ....... 11

6.  THE RANGE OF REASONABLENESS OF THE SETTLEMENT AMOUNT IN LIGHT OF THE BEST POSSIBLE RECOVERY AND ALL THE RISKS OF LITIGATION .......... 11

III. THE SCOPE OF THE RELEASE ........................................................................................ 11

## I. FEES FOR ATTORNEY HASSAN

This Court in its November 16, 2017 order stated in relevant part as follows (ECF No 20, pg. 3):

> Plaintiff's counsel requests that the Court approve the requested one-third contingency fee because "counsel has received similar or higher legal fees in other FLSA settlements approved by courts." (ECF No. 19, Pg. 2.) What is reasonable does not depend on what plaintiff's counsel has received in other cases, but rather whether the requested fee is fair considering both the lodestar in this district, plaintiff's counsel's hourly rate, and the hours that counsel expended in this case. A one-third contingency rate may be recognized as reasonable generally, but that does not discharge plaintiff's counsel's duty to provide his billing records as well as his hourly rate and his basis for charging that rate. Plaintiff's counsel shall supplement his motion for settlement approval by filing his contemporaneous billing statements as well as an affirmation setting forth his hourly rate, qualifications, and experience.

We did not submit time records and a formal fee application because the legal fee under the settlement is a 1/3 percentage fee as provided for in the retainer agreement, which does not depend on time records. See *Venegas v. Mitchell*, 495 U.S. 82, 89-90 (1990). In addition, it is my experience that most judges do not require time records under *Cheeks v. Freeport Pancake Inc.*, 796 F.3d 199 (2d Cir. 2015) where the fee is a 1/3 contingency fee – a position consistent with

*Venegas*. In fact, if my memory serves me right, Judge Bloom did take this same position in one of the conferences with the parties.

It is impossible to correctly analyze or determine the fees plaintiff's counsel is entitled to in fee-shifting cases, without addressing the unanimous Supreme Court decision *Venegas* - the leading case on this issue. In *Venegas*, nine out of nine members of the nation's highest court, understood and recognized the difference between the fees a defendant must pay to a prevailing plaintiff under a fee-shifting statute, and the fees a plaintiff must pay his attorney under a retainer agreement. Yet, my experience and a review of the cases reveal that most lower court judges are not aware of this critical distinction or the *Venegas* case. Fortunately, when made aware of this distinction and the *Venegas* case, most judges follow it and modify their position if necessary.

It appears that most judges are not aware of *Venegas*, because before *Cheeks*, most of them were never called upon to determine the retainer fees an attorney was entitled to from a plaintiff – they were only called upon to determine fees due to a prevailing plaintiff under a fee-shifting statute. After *Cheeks*, when judges began examining fees ultimately due to a plaintiff's attorney, many did so without recognizing or addressing the distinction the Supreme Court unanimously recognized in *Venegas* – between fees to be paid by defendant to the plaintiff and fees to be paid by the plaintiff to plaintiff's attorney. Also contributing to this error was the general lack of adversarial briefing in the *Cheeks* review process – parties willing to comply with erroneous rulings to get the case over with.

Rather than compound the error, this Court should recognize the distinction in *Venegas* going forward. Just recently, the Supreme Court itself acknowledged that it may have been less than meticulous in failing to recognize another critical distinction in its jurisprudence, and stated in relevant part as follows:

> The "mandatory and jurisdictional" formulation is a characterization left over from days when we were "less than meticulous" in our use of the term "jurisdictional." Kontrick, 540 U.S., at 454, 124 S.Ct. 906.11
>
> Hamer v. Neighborhood Hous. Servs. of Chicago, No. 16-658, 2017 WL 5160782, at *7 (U.S. Nov. 8, 2017)
>
> This Court and other forums have sometimes overlooked this distinction, "mischaracteriz[ing] claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis."
>
> Hamer v. Neighborhood Hous. Servs. of Chicago, No. 16-658, 2017 WL 5160782, at *3 (U.S. Nov. 8, 2017)

If the U.S. Supreme Court can clarify and correct course, we certainly can as well. In this regard, fees that a plaintiff's attorney is entitled to receive from the plaintiff is based on the retainer agreement and is not limited by the lodestar fees a defendant may be obligated to pay a prevailing plaintiff under a fee-shifting provision. This is a distinction that a unanimous Supreme

Court in *Venegas v. Mitchell*, 495 U.S. 82, 89-90 (1990) recognized when it stated in relevant part as follows:

> But neither Blanchard nor any other of our cases has indicated that § 1988, by its own force, protects plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents. Indeed, depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel.

In *Brown v. Starrett City Associates*, 2011 WL 5118438, 8 (E.D.N.Y.), the court, citing *Venegas*, also noted that even when a court makes a fee award, "The award is then subject to whatever private contractual agreement exists between plaintiff and his or her counsel." Moreover, fee-jurisprudence under other fee-shifting statutes is applicable to the FLSA as well. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("The standards set forth in this opinion [construing § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). *Smith v. Nagai*, 2012 WL 2421740, 5 (S.D.N.Y., 2012) ("In determining the [FLSA fee] award, courts utilize the analytical framework for civil rights cases under 42 U.S.C. § 1988."). *Ayres v. 127 Restaurant Corp.*, 1999 WL 328348, at *1 (S.D.N.Y., 1999); ("the law on attorney's fees is no different in FLSA cases than it is in employment discrimination cases"), aff'd, 201 F.3d 430 (2d Cir.1999).

Consistent with *Venegas*, the retainer agreement in this case between Plaintiff and Plaintiff's counsel reads in relevant part as follows (Exhibit 4, ¶ 12(b)):

> The amount of Attorney's contingency fee will be the greater of:
>
> (a) A reasonable percentage fee which is one-third (1/3) of all sums recovered on Client's behalf; or
>
> (b) A reasonable hourly fee which is the amount of Attorney's hourly rates as laid out below times the number of hours spent by the Attorney on Client's behalf; or
>
> (c) A separate recovery of fees such as where a court or other tribunal awards attorney's fees or where a defendant(s) settles a demand for fees.

This type of fee provision is very common in contingency retainer agreements in fee-shifting cases – especially after the Supreme Court's decision in *Venegas v. Mitchell*, 495 U.S. 82, 89-90 (1990). Plaintiff's counsel's customary and retainer rate in this action is $600 an hour – the effective hourly rate in this case is about $261.60/hr ($12, 295/47hrs (Exhibit 1)) – not including time spent on this submission and time to be expended for the remainder of the case. Obviously, an attorney is free to ultimately charge a plaintiff a lower fee than the attorney is entitled to under the retainer agreement. In fact, it is very common for me, and many other plaintiffs' attorneys, to reduce legal fees so that the plaintiff can pocket more money, as this case demonstrates, even though we are not legally required to. There are also cases in which I

4

completely waive fees and costs, and take nothing from the settlement. See i.e. *Martin v. Angel of Harlem, LLC et al*, 15-cv-07836 (Judge Ramos noting that "Plaintiff's counsel [Hassan] has waived all legal fees and costs.").

## 1. THE IMPACT OF *CHEEKS* ON FEE DECISIONS

I note at the outset that attorney's fees were not at issue in *Cheeks*. The appeal in *Cheeks* was taken before any court approval occurred, and even upon remand, *Cheeks* was eventually dismissed without court approval – it was dismissed without prejudice. The only issue before the Second Circuit was whether or not FLSA dismissals with prejudice required court approval. As such, language in *Cheeks* about attorney's fees constitutes dicta. If legal fees were at issue in *Cheeks*, the Second Circuit would have had the benefit of detailed briefing and arguments on the fee issue which it did not have – this is why reliance on dicta can be dangerous.

A few judges have noted my role in *Cheeks* and are under an erroneous impression that I am totally opposed to the *Cheeks* decision. I view *Cheeks* a great success in many ways. My client's goal in taking the appeal in *Cheeks* was to avoid court approval which we viewed at the time as delaying the case. When the dust settled, the *Cheeks* case was dismissed without court approval – though it took much longer than expected. We agreed with the Second Circuit in *Cheeks* that the FLSA does not permit waiver of wages. However, we took the view that any fairness review should be done in the event there is a subsequent suit on the released claims – an approach that would have preserved the non-waivable nature of FLSA rights and reduce congestion in the courts at the same time. We also took the view in *Cheeks* that conditions such as confidentiality, non-disparagement, penalties, and other future obligations were improper in an FLSA settlement and the Second Circuit agreed. The Second Circuit also struck an appropriate balance and limited its holding in *Cheeks* to dismissals with prejudice - and not requiring court approval for other types of dispositions.

### (A) *CHEEKS* DID NOT CHANGE SETTLED FLSA-FEE JURISPRUDENCE

Importantly, to the extent the dicta in *Cheeks* about fees is followed, Cheeks only required a court to ensure that the FLSA, including its fee jurisprudence, is complied with. *Cheeks* could not and did not change FLSA-fee jurisprudence. Moreover, *Cheeks* could not change settled FLSA jurisprudence because only an en banc panel of the Second Circuit can overturn a published precedent of a prior three-judge panel. As noted above, it is well settled in the Second Circuit that fees to a prevailing party under the FLSA is determined using the lodestar, and fees due to the plaintiff's attorney is determined by the retainer agreement and can be higher than the lodestar the prevailing party is entitled. It is also important to note that it is the prevailing plaintiff that has the statutory right to fees from the Defendant – not his attorney. The attorney's right to fees comes from the retainer agreement as explained in *Venegas*.

### (B) *CHEEKS* IS CONSISTENT WITH *VENEGAS*

Significantly, while *Venegas* is the supreme law of the land, and cannot be overridden by the dicta in *Cheeks* about attorney's fees, *Cheeks* is fully consistent with *Venegas*. First, binding

authorities should be interpreted in a manner that produces consistency instead of conflict, if possible. Here, to the extent the dicta in *Cheeks* controls, such dicta did not put a cap on attorney's fees – it merely required "adequate documentation to support such a fee award." *Cheeks*, 796 F.3d at 206 (2d Cir. 2015). While time records are one form of documentation, the retainer agreement constitutes controlling "documentation" under *Cheeks* as well as *Venegas,* and is the most important form of documentation in setting legal fees.

In sum, the review of fees under *Cheeks*, only requires a court to determine if the fees are equal to or less than the attorney is entitled to under a valid retainer agreement.

### (C) *CHEEKS* DID NOT PLACE A PERCENTAGE CAP ON FEES

Here, to the extent the dicta in *Cheeks* controls, such dicta did not put a cap on attorney's fees – it merely required "adequate documentation to support such a fee award." *Cheeks*, 796 F.3d at 206 (2d Cir. 2015). By way of reinforcement, assume an employee is owed $2,000 in wages, her counsel incurred $49,000 in legal fees, and the employer settled for $40,000 inclusive of fees. In this example, 95% of the settlement consists of legal fees actually incurred, and it would make little sense to limit the fees to 1/3 of so-called "recovery" – such an outcome is not supported by FLSA law or logic. In any event, fees in FLSA cases are ultimately determined by the retainer agreement, as more fully set forth below and herein.

Obviously, the purpose of *Cheeks* was to enforce the FLSA not to contradict it. In this regard, legal fees can and frequently do exceed the wages owed to the employee. *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 CIV. 4352 PKC, 2011 WL 4336677 (S.D.N.Y. Sept. 15, 2011) ("There is no requirement that a fee award be proportional to the amount of recovery."). *Millea v. Metro-N. R. Co.*, 658 F.3d 154 (2d Cir. 2011) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded."). *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008) (in FLSA case "the district court awarded $49,889 in attorney's fees, which, when added to the compensatory and liquidated damages and costs, yielded plaintiff a total award of $58,229.29.").

In other words, if a district court judge in an FLSA case, limited the fee to a percentage of recovery, that judge will be reversed by the Second Circuit based on settled precedent. Whether in a fee application or in a settlement context, the applicable authority is the FLSA and related Supreme Court precedents such as *Venegas*. See also *Domenech v. Parts Authority, Inc.* 15CV-3595, ECF No. 41, 42 (ILG - EDNY) (approving $35,000 in damages and $70,000 in fees and costs under *Cheeks*); *Jones v. Bryant Park Market Event LLC*, 13-CV-1369, ECF Entry of 10/24/2016 (AJP - SDNY) (approving $4000 in damages and $55,000 in fees and costs under *Cheeks*); *Bernard v. QPH Plumbing & Heating Inc.* 16-cv-4716, ECF No. 17 (ST - EDNY); (approving $2000 in damages and $9,000 in legal fees and costs under *Cheeks*); *Francis v. Bowery Residents' Committee, Inc.*, 15-cv-07102 (RLE - SDNY), ECF No. 25 (approving $5,000 in damages and $10,500 in fees and costs under *Cheeks*); *Caraballo v. 1195 Sherman Ave.*,15-cv-02325(WHP - SDNY), ECF No. 31 (approving $3000 in damages and $10,000 in fees and costs under Cheeks); *Precil v. U.S. Security Associates, Inc.* 15-cv-8893(PGG - SDNY), ECF

No. 14 (approving $3780 in damages and $8720 in fees and costs under *Cheeks*); *Soler v. Mase Electric, Inc. et al*, 16-cv-1653(LMS - SDNY), (February 7, 2017 text only Order - approving $4500 in damages and $10,000 in fees and costs under *Cheeks*).

### (D) THE FLSA PLACES THE DUTY TO PAY WAGES ON THE EMPLOYER – NOT ON THE EMPLOYEE'S ATTORNEY

The FLSA places the duty on the employer to pay certain wages to the employee. See 29 U.S.C.§ 207. Notably, the FLSA does not place any duty on plaintiff's attorney to pay any wages owed to the plaintiff – if there is any shortfall in wages, it must be filled by the employer and not from the fees earned by the plaintiff's attorney under the retainer. In *Mares v. Kim*, No. 15 CIV. 7197 HBP, 2016 WL 4098408, at 2, fn 1 (S.D.N.Y. July 25, 2016), the court stated in relevant part as follows:

> As described in Cheeks, the purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206. I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney.

Once again, even if a court reviews fees, the fee is proper under Cheeks if it is supported by "adequate documentation." In the case of a 1/3 percentage fee, a provision in the retainer agreement supporting such a fee constitutes adequate documentation. Moreover, there is nothing in the FLSA that prevents an FLSA plaintiff from using some or all of his wages to pay his legal bills, his medical bills, his phone bill, his rent etc. In fact, I even had one case where most of the Plaintiff's share of the settlement went to satisfy a garnishment for child support – the attorney's right to payment would have an even higher priority.

The Supreme Court and the Second Circuit have held that an agreement between employer and employee waiving FLSA wages or rights is invalid or unenforceable. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 (1946), and the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 207 (2d Cir. 2015). However, borrowing from the Supreme Court in *Venegas,* 495 U.S. at 87:

> it is a mighty leap from these propositions to the conclusion that [the FLSA] also requires the District Court to invalidate a contingent-fee agreement arrived at privately between attorney and client.

For the many compelling reasons explained by the Supreme Court in *Venegas*, a retainer fee is not unreasonable merely because it is higher than fees that would be awarded in a fee application under a fee-shifting statute like the FLSA. For example, in *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015), Mr. Paul Clement, the well-respected Supreme Court litigator, had a retainer rate of $1100 an hour but was awarded only $300 an hour following a fee application in that fee-shifting civil rights case. However, that the fee-shifting rate the defendant had to pay was $300, does not mean that the $1100 rate the civil rights plaintiff in that case agreed to pay Mr. Clement was unreasonable or unconscionable– I think most people would

7

agree that an $1100 an hour fee is not unreasonable or unconscionable for someone of Mr. Clement's skill, reputation and experience, if his client agreed to pay him that. In one of my recent FLSA cases, the lead defense attorney was charging $730 an hour, even though he has litigated less than half the more than 300 employment/FLSA cases I have litigated in federal court. See *Young v. Joy Construction Company Inc.* et al, Case No. 15-cv-02642, ECF No. 41-3. Also, in *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 CIV. 4352 PKC, 2011 WL 4336677, at fn 2 (S.D.N.Y. Sept. 15, 2011), the lead plaintiff's attorney in that FLSA case was charging $750/hr. In fact, in *Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5, 26–27 (S.D.N.Y. 2015), the Court noted that "in 2012 a court in this district approved a $550.00 rate for a mid-size firm partner in an FLSA case (Outten & Golden) ... and the Second Circuit subsequently affirmed that decision." The court in *Gonzalez* 112 F. Supp. 3d at 26–27, also noted that another plaintiff's attorney in an FLSA case was awarded $600/hr.

As we have explained above, a retainer rate to be paid by the client, can and is usually higher than a fee-shifting rate to be paid by the opposing employer. However, we include these examples to provide some understanding and context of Plaintiff's counsel retainer rate. Mr. Hassan's experience is detailed in his accompanying declaration.

## 2. THE IMPACT OF WOLINSKY

This Court relied on *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012), in requiring Plaintiff's counsel to make the equivalent of a fee application under the FLSA based on the lodestar. However, as explained above, *Wolinsky* did not address Venegas or the distinction recognized by a unanimous Supreme Court in *Venegas* – the difference between lodestar fees due to a prevailing party from the employer, and the retainer fees the prevailing attorney is entitled to. In any event, it appears that Judge Furman, the author of the *Wolinsky* decision, currently recognizes that the retainer agreement dictates what fees should be paid to the prevailing attorney is entitled to from the plaintiff. For example, in *Kevin Lynch v. Consolidated Edison, Inc.*, Case No. 16-CV-1137, ECF No. 37, Judge Furman approved a 1/3 percentage fee of $14, 826, and stated in relevant part as follows:

> In addition, although the proposed award of attorney's fees is high relative to the size of the Plaintiff's claim and recovery, the Court sees no basis to reduce the fee where, as here, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and his attorney

I was also the attorney for the Plaintiff in *Lynch*. Notably, I did not submit time records in the *Lynch* case because the fee was a percentage of recovery under the retainer agreement and not based on the hours expended in the case. Given Judge Furman's application of his *Wolinsky* decision, it is not correct that *Wolinsky* requires time records where the fee is a percentage fee based on the retainer agreement, as is the case here.

## II. PLAINTIFF'S SHARE OF THE SETTLEMENT IS REASONABLE

In its November 16, 2017 order the Court stated in relevant part as follows:

> To determine whether a FLSA settlement agreement is a reasonable compromise in a case that does not involve a certified class, the Court takes into account "(1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation." Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081, at *2 (E.D.N.Y. Nov. 19, 2014) (internal citations omitted). Plaintiff fails to discuss these factors in the letter motion submitted with the parties' settlement agreement. Without additional information, the Court cannot determine whether the agreement is fair and reasonable.

At the outset, we do agree with the Court that some or all of the above factors should be taken into account. However, the grounds for waiver of wages are much more limited under the FLSA. As with the attorney fee standard, the standard set forth in *Calle*, and even in *Wolinsky*, for waiver and compromise of wages under the FLSA, is incorrect. First, we note that the decisions in both *Calle* and *Wolinsky* were issued before *Cheeks*. Second, the standards in both *Calle* and *Wolinsky* are derived in some form or the other from the standard used to assess settlements in the class action context - but the considerations under the FLSA are not the same. In this regard, some courts have relied on the class action standards for settlement approvals by equating FLSA plaintiffs to absent class members whom the court must protect in the litigation and settlement. However, unlike class actions, there is an additional dynamic under the FLSA where waiver of wages is prohibited even if there is adequate protection by lawyers and the Court.

As the Second Circuit noted in *Cheeks*, the Supreme Court at most has only recognized one *possible* ground for waiver of FLSA wages. In this regard the Second Circuit in *Cheeks* 796 F.3d at 202–03, stated in relevant part as follows:

> However, the Supreme Court again specifically declined to opine as to "the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." Id. at 114–15, 66 S.Ct. 925.

Notably, financial hardship is not a valid basis under the FLSA for waiving wages – even if logically it should be. At the outset, financial hardship is not a defense to liability under the FLSA and evidence of financial hardship is not considered by a jury in determining FLSA liability. See also, *Cheeks* 796 F.3d at 205 (preventing the waiver of wages even where the plaintiff faces "extenuating economic and social circumstances"). If financial hardship and disputes over coverage are not valid bases for waiving FLSA wages, all of the grounds identified in *Calle* and *Wolinsky* cannot be valid grounds for waiving FLSA wages.

9

Fortunately, however and consistent with the Second Circuit's ruling in *Cheeks* and the Supreme Court's rulings in *Gangi* and *Brooklyn Savings*, there is a bona fide dispute as to hours and wages in this case that is sufficient to justify any waiver of wages under the FLSA. Specifically, the wage records purport to show that Plaintiff did not work overtime for the period until around early 2015 (See Ex. 2), and that from then on, Plaintiff was paid a proper overtime rate for his overtime hours. (See Ex. 3). By contrast, Plaintiff claims that for the first period, the paystubs did not show any of the overtime hours he worked, and that for the second period, the pay stubs only showed some of the overtime hours he worked. We therefore have a classic dispute as to hours and wages that turns on the credibility of the parties. If a jury believes Defendants and their purported records, Plaintiff will receive no wages. On the other hand, if a jury believes Plaintiff in full, Plaintiff can receive about $48,806.50 in unpaid overtime wages - $12,757.25 of which is under the two-year FLSA statutes of limitation period. As such, the parties resolved the bona fide dispute by reaching a compromise where Plaintiff is receiving $24,590 after a 1/3 contingency fee of $12,295 after costs of $615.

In terms of monetary provisions, the Court's role under *Cheeks*, is to determine if the employer is paying enough in wages under the settlement – whether there is a waiver of FLSA-protected wages, and if so, whether the waiver in favor of the employer is improper. That is an extremely difficult task for courts. See *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241 (M.D. Fla. 2010) ("Short of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."). *De Fabio v. QualityPro Pest & Wildlife Services Inc. et al*, 15-CV-9483, ECF No. 38, (Judge Karas, May 2, 2017) ('When assessing a proposed settlement for fairness, there is generally "a 'strong presumption in favor of finding a settlement fair,' as 'the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement.'" *Lliguichuzhca v. Cinema* 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quoting *Crabtree v. Volkert, Inc.*, No. 11-CV-529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013)); see also *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same)').

Even though the *Calle* factors should, but are not valid grounds for waiving FLSA wages, we will nonetheless address then as directed by the Court.

### 1. THE COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION

FLSA cases can be complex and very challenging, especially where as here, the records purport to contradict Plaintiff's allegations and Plaintiff would have to develop evidence, and convince a jury that the records are erroneous. Litigation, especially in modern times, is not cheap and legal fees can quickly exceed the damages at stake in this case. An FLSA case here in the EDNY can take anywhere from 1-3 years and sometimes more to complete by way of trial.

### 2. THE STAGE OF THE PROCEEDINGS AND THE AMOUNT OF DISCOVERY COMPLETED

Following the initial conference, the parties completed paper discovery and the deposition of Plaintiff. The case was filed on January 18, 2017 – the last several months were spent in settlement discussions after new defense counsel came into the case.

### 3. THE RISKS OF ESTABLISHING LIABILITY

As we pointed out, there is always a risk in having a jury decide a case. In this case Plaintiff would also have to overcome Defendants' wage and time records in order to prove liability.

### 4. THE RISKS OF ESTABLISHING DAMAGES

As we pointed out, there is always a risk in having a jury decide a case. In this case Plaintiff would also have to overcome Defendants' wage and time records in order to prove the extent of damages.

### 5. THE ABILITY OF DEFENDANTS TO WITHSTAND A LARGER JUDGMENT

It is not certain that Defendants would be able to withstand a larger judgment as the installment nature of the settlement seems to indicate. This is a fee-shifting case and if it goes to trial, Defendants would likely be liable for hundreds of thousands of dollars in legal fees on both sides.

### 6. THE RANGE OF REASONABLENESS OF THE SETTLEMENT AMOUNT IN LIGHT OF THE BEST POSSIBLE RECOVERY AND ALL THE RISKS OF LITIGATION

We believe the settlement is very reasonable. Despite Defendants' wage records, the settlement can be viewed as providing Plaintiff with most or all of his FLSA wages and with about half of overall wages claimed.

## III. THE SCOPE OF THE RELEASE

In its November 16, 2017 order the Court stated as follows with respect to the release in the case:

> Thus, the "including but not limited to" language is overbroad, and plaintiff should only release defendants from claims under the FLSA and NYLL.

We respectfully ask the Court to deem the required change of the release made in light of its order, or to make the change directly in the settlement agreement. This is because Plaintiff is out of state and unavailable at this time to execute a new agreement, and in general reworking and re-executing the agreement would require significant additional time and coordination on both sides. Also, if the parties "agree" to the change, they may lose their right to appeal this

aspect of the Court's ruling if necessary – though it is the desire of all involved to conclude this matter expeditiously.

      We thank the Court in advance for its time and consideration.

Respectfully submitted,

Abdul Hassan Law Group, PLLC

 /s/ Abdul Hassan_____
By: Abdul K. Hassan, Esq. (AH6510)
*Counsel for Plaintiff*

**cc:**    **Defense Counsel via ECF**