DF

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 7 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

MATARR CEESAE,

             Plaintiff,

  -against-

TT'S CAR WASH CORP.; DAYANA TRADING INC.;
and TOM THOMAS,

             Defendants.

-------------------------------------------------------------------  X

17-cv-291 (ARR) (LB)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

ORDER

ROSS, United States District Judge:

The Court has received the Honorable Lois Bloom's Report and Recommendation dated January 3, 2018. R. & R., ECF No. 22. Plaintiff has objected to portions of Judge Bloom's legal analysis in the Report and Recommendation, but has not objected to her ultimate findings or recommendation. Objs. to R. & R. ("Objs."), ECF No. 26. I have reviewed the portions of the Report and Recommendation to which plaintiff did not object for clear error on the face of the record. See Advisory Comm. Notes to Fed. R. Civ. P. 72(b); accord Brissett v. Manhattan & Bronx Surface Transit Operating Auth., No. 09-cv-874, 2011 WL 1930682, at *1 (E.D.N.Y. May 19, 2011). Because I conclude that Judge Bloom did not clearly err in finding that that the settlement, including the fee award, is fair and reasonable, I adopt Judge Bloom's findings and recommendation. The settlement is therefore approved.

## BACKGROUND

Plaintiff worked for defendants as an "oil change technician and lube operator" from June 2010 to May 2016, with a ten-month gap in 2012. Compl. ¶¶ 17-18. Until August 2015, he worked seventy-two hours a week and was paid between eight and nine dollars for each hour he worked.

1

Compl. ¶¶ 19, 21. From August 2015 until May 2016, he worked sixty hours a week and was paid his normal hourly rate for fifty-two and a half of those hours. See id. ¶ 22.

Plaintiff sued defendants for unpaid overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and New York Labor Law sections 190 through 199 and 650 through 665. In October 2017, the parties reached a settlement agreement, which provides plaintiff with $37,500 ($12,909.99 of which would go to plaintiff's counsel) in exchange for dismissing the present case and releasing any existing local, state or federal wage-and-hour claims against defendants. See Settlement Agreement and Release ("Settlement Agreement"), ECF No. 19-1, at ¶¶ 2, 4. Plaintiff then moved for settlement approval. Mot. Settlement Approval, ECF No. 19.[1]

I referred this motion to Judge Bloom for a Report and Recommendation under 28 U.S.C. § 636(b), which she issued in January 2018. She recommended that the proposed settlement be approved, including the attorney's fee award. R. & R. at 1, 8. She recommended one modification to the settlement—that the second appearance of the phrase "but not limited to" be stricken from plaintiff's release of claims. Id. at 9; see Settlement Agreement at ¶ 4.

Plaintiff then filed his objections to the Report and Recommendation. Plaintiff does not object, unsurprisingly, to Judge Bloom's finding that the proposed settlement, including the fee award, was fair and reasonable. Nor does he object to her ultimate recommendation that the settlement be approved. Instead, he objects to Judge Bloom's description of the legal standards governing fee awards in FLSA settlements. See Objs. at 1. Specifically, he argues that the present case is controlled by Venegas v. Mitchell, 495 U.S. 82 (1990), which held that 42 U.S.C. § 1988 does not "invalidate[] contingent-fee contracts that would require a prevailing civil rights plaintiff to pay his attorney more than the statutory award against the defendant." Id. at 83-84, 90. According to plaintiff, a district

---

[1] At Judge Bloom's direction, the plaintiff supplemented his motion for settlement approval on November 22, 2017. Suppl. Mot. Settlement Approval, ECF No. 21.

2

court should not second-guess a plaintiff's retainer agreement, regardless of how much it allocates to the plaintiff's lawyer. Objs. at 5.[2] Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), does not require otherwise, plaintiff argues, because —any dicta in that case regarding attorney's fees could not have overruled Venegas. Objs. at 4.

In addition to the argument above, plaintiff raises three other objections to Judge Bloom's settlement approval analysis. First, he argues that when there is a retainer agreement with a contingency fee arrangement, plaintiff's counsel should not have to provide his contemporaneous billing records to the court, as Judge Bloom required him to do. Id. at 2-4. Second, he argues that a plaintiff may only accept less than the full amount of wages he or she is owed when there is a "bona fide dispute as to liability," Cheeks, 796 F.3d at 203; see also Objs. at 12-14. According to plaintiff, the factors recited by Judge Bloom from Calle v. Elite Specialty Coatings Plus, Inc., No. 13-cv-6126, 2014 WL 6621081, at *2 (E.D.N.Y. Nov. 21, 2014)—"some or all of [which] should be taken into account," Objs. at 12—do not capture the need for the court to find a bona fide dispute as to liability. Id. at 12-14. Third, plaintiff objects more generally to the inconsistency he perceives in district courts' application of Cheeks. Id. at 16. Specifically, he argues that there are splits over: when Cheeks review is required, what settlement provisions are acceptable, and what procedure attorneys and judges must follow during the approval process. Id. at 16-17. Plaintiff closes by stating that judges should amend their individual rules to clarify these issues for litigants. Id. at 17-18.

## DISCUSSION

Unless there is clear error on the face of the record, I will adopt any portion of the Report and Recommendation to which plaintiff has not objected. See Advisory Comm. Notes to Fed. R. Civ. P. 72(b); accord Brissett., 2011 WL 1930682, at *1 (E.D.N.Y. May 19, 2011). Although plaintiff's counsel has made extensive objections—as described above—he has not objected to any of Judge Bloom's

---

[2] Citations refer to the pagination at the bottom of the Objections, rather than the ECF header.

actual findings or recommendations. He has not objected to her determination that the proposed settlement is fair and reasonable or to her recommendation that it should be approved with the phrase "but not limited to" omitted from the release of claims. For the reasons set forth below, I find that Judge Bloom did not clearly err when she made these findings and recommendations. I therefore adopt her Report and Recommendation.[3]

In FLSA cases, stipulated dismissals with prejudice under Federal Rule of Civil Procedure 41(a)(1) must be approved by the district court or the Department of Labor. Cheeks, 796 F.3d at 206. To be approved, the settlement must be fair and reasonable under the totality of the circumstances. Galindo v. E. Cty. Louth Inc., No. 16-cv-9149, 2017 WL 5195237, at *3 (S.D.N.Y. Nov. 9, 2017); see also Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). District courts have enumerated two lists of factors relevant to this determination. Either set of factors can guide a court's analysis as to whether a settlement is fair and reasonable—it is not necessary for a court to apply both.

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the court considered:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.
>
> Id. at 335 (quoting Medley v. Am. Cancer Soc'y, No. 10-cv-3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

In addition, the Wolinsky court noted that the following factors weigh against settlement approval:

> (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA noncompliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

---

[3] I understand the statements of law below to be consistent with Judge Bloom's description of the law.

4

>    Id. at 336 (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

Similarly, in Calle, the court considered:

> (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation. The court should also consider whether the settlement is the result of an arm's length negotiation conducted in good faith by counsel with significant experience litigating wage and hour suits.

2014 WL 6621081, at *2 (citations omitted).

Both the Wolinksy and Calle factors go to whether a settlement is fair and reasonable. Although both cases slightly predate Cheeks, they are still relevant. Cheeks merely confirmed that settlement approval is required when parties stipulate to a dismissal with prejudice—in doing so, it did not significantly change the existing fairness analysis. But it did put a gloss on that analysis, highlighting four problematic settlement characteristics, each of which might prevent approval. These characteristics are: (1) "highly restrictive confidentiality provisions," (2) overbroad releases that "waive practically any possible claim against the defendants, including . . . claims that have no relationship whatsoever to wage-and-hour issues," (3) provisions providing attorney's fees "without adequate documentation," and (4) promises from plaintiff's attorney not to represent others with similar claims against defendant. Cheeks, 796 F.3d at 206 (first and second quotations quoting Nights of Cabiria, 96 F. Supp. 3d at 177, 181).

In addition, a settlement will always be disapproved if it violates the Supreme Court's holdings in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 (1945), and D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946). An employee may not waive his right to actual wages owed or to liquidated damages if there is no genuine dispute as to liability, O'Neil, 324 U.S. at 704, 713-14, or if the dispute centers on whether the employer is covered by the FLSA, Gangi, 328 U.S. at 114. In both cases, the Court

5

observed that to hold otherwise would allow the "unequal bargaining power ... between employer and employee" to thwart the FLSA's protective and compensatory purposes. O'Neil, 324 U.S. at 706-07; see also Gangi, 328 U.S. at 115. The Court left open, however, whether an employee might waive his right to actual wages or liquidated damages where "there is a dispute over the number of hours worked or the regular rate of employment." Gangi, 328 U.S. at 114-15. Cheeks then answered that question for the Second Circuit. Under Cheeks, a plaintiff may waive his right to damages when there is a genuine dispute as to liability relating to the hours worked or the amount of compensation due—provided the court or the Department of Labor approves the settlement. See 796 F.3d at 203-06.

When conducting a Cheeks review, the court must also evaluate any agreed-upon attorney's fees. This evaluation operates on two related levels. First, the fee must simply be reasonable. See 29 U.S.C. § 216(b) (stating that the court "shall ... allow a reasonable attorney's fee to be paid by the defendant"). This is the traditional attorney's fee analysis, which requires the court to "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees." Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008)). These factors include but are not limited to "the time and labor required," "the amount involved in the case and results obtained," and "the experience, reputation, and ability of the attorneys." Arbor Hill, 522 F.3d at 186 n.3. Second, the fee must be fair and reasonable to the settling plaintiff. If a fee award "is overly generous to the attorney, it may affect the fairness and reasonableness of the payment to the client. Thus, a review of the proposed attorneys' fee is central to determining whether the overall settlement is fair and reasonable to the plaintiff." Seck v. Dipna RX, Inc., No. 16-cv-7262, 2017 WL 1906887, at *3 (S.D.N.Y. May 8, 2017). In other words, the first inquiry is focused on what is reasonable overall, whereas the second inquiry focuses on what is reasonable in light of the settlement agreement.

In her analysis, Judge Bloom noted that the parties dispute liability, that plaintiff's recovery under the settlement agreement is more than three-fourths of his potential recovery at trial, and that the settlement is the result of arm's-length negotiations by experienced labor lawyers. R. & R. at 4-5. In addition, she found that the fee award was fair and reasonable because it constituted approximately one-third of the total settlement amount and because contemporaneous billing records confirmed that the fee was "commensurate with the work done on this case." Id. at 8. I find that Judge Bloom therefore did not clearly err in finding that the settlement, including the fee award, was fair and reasonable.

Furthermore, I find that Judge Bloom did not clearly err in recommending that the second appearance of the words "but not limited to" be stricken from the plaintiff's release of claims. See id. at 9. Judge Bloom points out that FLSA case law discourages the release of claims that are unconnected to wage-and-hour issues. See Cheeks, 796 F.3d at 206; Gurung v. White Way Threading LLC, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016). In the proposed settlement agreement, plaintiff agrees to release defendants from "any and all claims for any wage and hour violations, and related retaliation, under federal, state, and/or local law, including but not limited to . . . all claims that were or[] could have been asserted in the Lawsuit, whether known or unknown, under federal, state, and/or local wage and hour laws (including *but not limited to* the FLSA, the [New York Labor Law] and New York Code of Rules and Regulations)." Settlement Agreement at ¶ 4 (emphasis added). Judge Bloom reasons that the only claims that can fairly be released are ones that fall under the FLSA, New York Labor Law, and the New York Code of Rules and Regulations. R. & R. at 9. Because the phrase "but not limited to" suggests that plaintiff may also be waiving claims from other sources, it is overbroad. Id. Striking the phrase resolves the problem. Finding that Judge Bloom did not clearly err in making this suggestion, I adopt it and order that the settlement be approved with that modification.

Plaintiff objects to a number of statements of law in the Report and Recommendation.

"[O]bjections to . . . proposed findings or recommendations" are reviewed de novo. 28 U.S.C. § 636(b)(1)(C). Plaintiff, however, does not object to any of Judge Bloom's proposed findings or recommendations. He first objects to the fact that Judge Bloom required him to provide contemporaneous billing records. Objs. at 2-4. Plaintiff's position is that Cheeks does "not require or prohibit review of legal fees" and that the Supreme Court's decision in Venegas v. Mitchell, 495 U.S. 82 (1990), controls the review (or lack thereof) of attorney's fees in FLSA settlements. Objs. at 4-12. In addition, plaintiff objects to Judge Bloom's description of the standard for evaluating a plaintiff's recovery under Cheeks. Id. at 12-14. Finally, plaintiff objects more generally to the perceived inconsistency in district courts' applications of Cheeks in the two-and-a-half years since that decision came down. Id. at 16-17. He requests that judges update their individual rules to clarify their positions on when Cheeks review is required, what settlement provisions are acceptable, and what procedures attorneys and judges must follow during the approval process. Id. at 17.

Plaintiff's objections, however, are inapposite, as he has objected only to portions of the Report and Recommendation that can have no effect on the outcome of the case. Plaintiff's counsel, as a dedicated FLSA litigator, has interpretations of the FLSA that he wishes to see recognized by the courts. And naturally he would appreciate more detailed guidance on how the settlement approval process works for each individual judge. This is not, however, the proper avenue through which to pursue these complaints. Plaintiff has received the relief he sought. The settlement that he submitted to the court has been approved, including the fee award. Neither plaintiff nor plaintiff's attorney has any concrete interest in correcting perceived misstatements of law that will not affect the outcome of the present case. Plaintiff's counsel can, of course—as he has done in the past—raise these issues in a case where a proposed settlement has been rejected.

## CONCLUSION

The settlement is approved, with the modification that the second appearance of the phrase

"but not limited to" is stricken from plaintiff's release of claims in paragraph four of the Settlement Agreement.

So ordered.

Dated: February 6, 2018
Brooklyn, NY

/s/(ARR)
_____
United States District Judge